UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| DONALD MCNAMARA, *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| *versus* § | | CIVIL ACTION H-03-226 |
| § | | |
| § | | |
| ENCANA ENERGY SERVICES, INC. § | | |
| § | | |
| Defendant. § | | |

# Opinion on Summary Judgment

1. *Introduction.*

Two men say that their employer lied to them about its bonus plan and their continued employment. They are wrong. The company has moved for summary judgment and will prevail.

2. *Background.*

Donald McNamara and Perry Johnson were traders for PanCanadian Energy Services. In 2001, PanCanadian introduced two incentive programs. One plan was for marketing people; another was for the rest of its employees. In November, McNamara and Perry received letters about the plan for traders. The letter said that bonuses would be based on individual performance. That December, plan participants attended a slide show describing the plan. It conveyed clearly that distribution from the pool would be discretionary, based on past work, and made only to current employees. The bonus would be based on 2001 work, but the distributions would be in the spring of 2002.

In March 2002, McNamara received a $90,000 bonus for his 2001 performance; Johnson received $40,000. In April 2002, PanCanadian merged with Alberta Energy Company, Ltd., forming EnCana Energy Services. Shortly after the merger, Houston employees learned that their last day of work would be August 10, 2002. EnCana

transferred three Houston employees to Denver and one to Calgary. It fired the rest, including McNamara and Johnson. EnCana offered severance pay to fired workers for their release of claims. McNamara and Johnson rejected the deal.

One background fact is that natural-gas marketing was an industry that had gone through dramatic change over the preceding years and was entering a severe contraction in 2001.

They argue that the company tricked them somehow with a false promise that it would distribute to the employees the remaining funds in the bonus pool if the company were sold. They say that their severance offers were less than what they deserved from the pool.

They have sued based on a variety of legal theories about supposed statements by PanCanadian's officers about the plan and about their job security. This court has already ruled that the 2001 incentive plan was not a contract, holding that EnCana was not obliged to pay McNamara and Johnson funds from the pool when or after it fired them.

The remaining claims are (a) fraud, (b) negligent misrepresentation, (c) promissory estoppel, (d) unjust enrichment, and (e) quantum meruit.

3.  *Fraud.*

McNamara and Johnson say that PanCanadian committed fraud by having no intention of fulfilling its "obligations" when it presented the bonus plan. Pls.' Second Am. Compl. at 11. Alternatively, they say that, when PanCanadian decided to merge with Alberta Energy, it knew that it would not distribute the pool.

To establish fraud, McNamara and Johnson must show that (a) PanCanadian represented as a fact something that it knew was not true, (b) the fact was material to decisions that the traders would make, (c) it intended that McNamara and Johnson would rely on the representation, (d) they did reasonably rely, and (e) they suffered as a consequence of that reliance. *Wilson v. Jones*, 45 S.W.2d 572 (Tex. Comm'n App. 1932, holding approved). They cannot.

*Misrepresentation*. PanCanadian made no false statements. It said that distributions would be discretionary. McNamara acknowledged this. Depo. of Donald

McNamara, dkt. 53, ex. C, tr. at 16, 20, 21. The company could have given bonuses to everyone or no one. PanCanadian also said that the bonuses would be paid (a) for past work and (b) only to current employees. They were. McNamara and Johnson received substantial bonuses in fulfillment of PanCanadian's policy; that alone keeps the statements in November from being lies.

Representations must be about present facts rather than predictions or even promises of future performance. The exception is when the plaintiff can show that, at the time the promise was made, the maker had the intention not to perform as promised. This cannot be inferred from later nonperformance alone. The traders have no evidence that the company (a) made a promise or (b) had the intention not to perform it. The plaintiffs are complaining that they got only one bonus. They also got another bonus for their work in 2000 as part of another bonus plan – one that PanCanadian had not announced. Decl. of Pat Macdonald, dkt. 53, ex. A, para. 8. The payments for 2001 and 2000 work – one of which was never announced, much less promised – precludes an inference of duplicity at the beginning.

*Intention.* Next, PanCanadian only intended to motivate its traders when it introduced the plan; it did not intend its workers to rely on it for anything except selling gas.

*Reliance.* McNamara and Johnson did not rely to their detriment. Assuming that they actually worked harder than they otherwise would have, their working harder is not the kind of reliance that the law protects. The plaintiffs have pointed to no decision of theirs that would have been different if, in November 2001, the company had said that no bonuses would be paid for 2001.

Moreover, when PanCanadian announced the plan, it made clear that the bonuses were for work that had already been completed. McNamara conceded this. McNamara, tr. at 17. He and Johnson could do nothing more to earn the bonuses. PanCanadian was entitled to their best efforts for their base pay. Categorically, one cannot have relied on a representation that was not made until the end of the year for which it was to be paid.

Reliance on the bonus plan for buying a new house or turning down an offer from another company would not have been reasonable. The reliance needs to be in connection with the transaction rather than life-style choice. If one of the plaintiffs had

settled his marital property division in January 2002 more generously than he otherwise would have, the company is not responsible for that decision's costs; he would have made a choice based on an uncertain future.

Reliance for anything would be unreasonable when the promise is conditioned on (a) the boss deciding maybe to give you some money at some time and (b) his not having fired you.

*Injury.* Last, they have suffered no injury. When the company gave the bonuses, each received one. Even if they had not, they still would have suffered no injury. They have identified no harm to them that was a consequence of nonpayment of the second phase of bonuses. The nonpayment itself is not a *consequent* harm. Their work was the only thing that they traded for the expectation of a bonus; that hope through 2001 was not based on a policy announced near the end of that year.

4. *Negligence.*

McNamara and Johnson say that PanCanadian negligently misrepresented the bonus plan and their employment. PanCanadian did so only if (a) it gave false information to McNamara and Johnson, (b) it did not exercise reasonable care in communicating it, (c) these men were in a relationship that would have indicated to the company that they would be relying on these particular statements, and (d) the men suffered injuries by relying on the information. *Federal Land Bank Ass'n of Tyler v. Sloane, et al.*, 825 S.W.2d 439, 442 (Tex. 1991). First, the two facts must be treated separately: bonus plan and employment.

*Bonus.* Because the representation about the bonus plan carried in it the reservations that were used to omit the plaintiffs' second bonus, we need not inquire into the negligence of the company's having told the truth. PanCanadian had the discretion to decide who received bonuses and in what amount. It could have even decided to give no bonuses. It could have fired the traders. McNamara does not dispute this. *Id.* at 18. He testified that Craig Elias, PanCanadian's president, had said that the company would withhold money in "lean years." McNamara, tr. at 18. The company fulfilled the terms of the plan as introduced at the presentation in December 2001. It decided who got bonuses and how much. It paid the bonuses during the first quarter of the next year, and

it paid only current employees. It misled no one.

*Employment.* McNamara and Johnson were employees at will. McNamara testified that no one promised him that he would be at the company indefinitely. McNamara, tr. at 11. He also said that he had no job offers from late 2000 to late 2001. *Id.* at 25. According to McNamara, during this time, he was not looking for a job because the industry had slowed and he wanted to see what was going to happen with the bonus plan as well as the merger. *Id.* at 23.

If PanCanadian said nothing to McNamara about his employment, it could misrepresent nothing. Further, the absence of job offers – and a job search – shows that he lost no opportunity and therefore suffered no injury. McNamara's misrepresentation claim fails.

Johnson testified that, in the summer of 2001, PanCanadian assured him that his job was safe. Depo. of Perry Johnson, dkt. 53, ex. B, tr. at 100–102. This was despite rumors in the industry that PanCanadian was going to close its United States operations. *Id.* at 103–105. Johnson says that he would have begun looking for another job at the *beginning of 2001*, if PanCanadian had not told employees in the *summer of 2001* that their jobs were secure and that PanCanadian was going to introduce a bonus plan. *Id.* at 107. Johnson may not rely retroactively. He may not say that he chose not to look for another job based on a statement that PanCanadian made about five months after he would have started looking.

Assuming that PanCanadian "assured" him that his job was safe, that assurance is not contractual; it is not tortuous either. Dampening the restlessness of employees by general assurances that the Houston operation will not close is cheerleading, not committing. They also deal with an uncertain future. These plaintiffs know that the best that could ever be said by a regional executive is that he knows of no plan at this time. Like McNamara's claim, Johnson's claim fails.

Last, even if PanCanadian had misrepresented the plan and the men's employment to them, their injuries are only speculative. They admit that layoffs in the industry were frequent during the time that they said PanCanadian was talking to them. Even if they had begun looking for jobs, they have no evidence that they would have been successful. Of course, if a job had been offered to them that they unilaterally found more appealing

than the one at EnCana, they would have left.  The law requires a fine reciprocity.

5.   *Estoppel.*

To recover under promissory estoppel, McNamara and Johnson must show that they relied to their detriment on PanCanadian's promises and that their reliance was reasonable and foreseeable.  *Morris v. Gaines*, 82 Tex. 255, 258 (1891); *Wheeler v. White*, 398 S.W.2d 93 (Tex. 1965).  This theory is simply another version of their fraud and negligent-misrepresentation claims.  PanCanadian promised only a discretionary bonus plan.  It did not promise McNamara continued employment.  In addition, Johnson's reliance was retroactive, not foreseeable, and it caused him no harm independent from his loss of the job and bonus.  This theory fails.

6.   *Quantum meruit.*

McNamara and Johnson may recover under the theory of quantum meruit only if they furnished beneficial services to PanCanadian and notified the company in advance that they expected payment and did not receive it.  *The City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (1977).  They did furnish services to the company, but they were compensated:  they received salaries and a partial bonus.  Neither contends that the company owes him additional salary.

In addition, at no time did McNamara and Johnson tell PanCanadian that they would continue working only if they received specific distributions from the bonus pool.  The bonuses were discretionary and based on past work.  McNamara and Johnson knew this.  This theory is inapplicable.

7.   *Enrichment.*

In addition, PanCanadian was not unjustly enriched through fraud, duress, or taking undue advantage of McNamara and Johnson.  *Pope v. Garrett*, 147 Tex. 18 (1947); *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (1992).  They knew the terms of the incentive plan, and they participated willingly.  Like the others, this theory fails.  There was no enrichment; EnCana fired them because their costs did not return sufficient revenue to profit the company.  The only injustice is the traders' petulant attack on the

company.

8.  *Conclusion.*

This is a case where ex-employees' inflated sense of their true desserts makes them believe that they have a legally cognizable claim.  They sued because their company said that if it did not give the bonus to others and if it did not fire them, they might be paid some of the amount distributed, and then it paid them some money and fired them.  Had EnCana done the acts that make an enforceable misrepresentation, the traders were not harmed as a consequence.  Their damages consists of their unhappiness over the irregularities of life – a wistful desire for monetary vengeance over a job that did not turn out to be as good as they had hoped.

The legal system is neither a free throw nor a pi ata.  Accusing a company of fraud should be done with care, after both factual and legal investigation.  PanCanadian committed no fraud or other wrong.  It did what it said it would.

On its motion for summary judgment, EnCana will prevail.  EnCana is invited to move for its attorneys fees for the contractual part of the case and for its fees as a sanction for the rest of it.

Signed August 30, 2005, at Houston, Texas.

                                          Lynn N. Hughes   USDJ
                                  United States District Judge